GRAND RAPIDS & INDIANA R. R. Co. v. MARY HEISEL.

*Railways in public streets—Damages to abutting owners.*

The dedication of a street to the public does not authorize it to be used for an ordinary railroad track; and the municipal representatives cannot authorize it to be so used without compensation to adjacent owners.

Those who have dedicated or platted lands and sold lots on streets or other public spaces cannot thereafter withdraw or change the use of them to their grantee's detriment and the destruction of their rights on the streets or public grounds on which their lots abut.

Any entirely unauthorized interference with any recognized right whatever, is a good ground of action.

Where a railroad track has been laid in a public street without authority to use the street for that purpose, any adjacent proprietor who has not consented to such use is entitled to damages for such injury as he may have suffered in consequence thereof.

It is for a jury to determine the damages to an adjacent proprietor from the malicious and unnecessary operation of a railroad in the public street.

An abutting owner who sues for damages resulting from the operation of a railroad in the public street is entitled to show such damages as would have been properly open to consideration by a jury of inquest empanelled to assess compensation upon the condemnation of the street for that purpose.

Adequate compensation for injury is such only as puts the party injured in as good condition as he would have been in if the injury had not been inflicted; the wrong-doer cannot throw any portion of an actual and appreciable loss on the injured party.

Adequate compensation for land actually taken under proceedings for its condemnation includes its value or the amount to which the value of the property from which it is taken is depreciated. Where the injury affects the rental value or enjoyment, the same principle applies.

Where a railroad company occupies a public street without proceedings for its condemnation, its occupancy is a continuous wrong to abutting owners, who may recover the amount of damages accruing year by year.

The Michigan statute for the condemnation of lands to the use of a railway company does not empower a party aggrieved by its unauthor-

ized occupancy of land to resort to the statutory remedy of appraisal for compensation, but he has a right of action in the ordinary way. Until the proper body has passed upon the necessity for the railway the question of compensation by statutory appraisal cannot arise.

Adjacent owners injured by a public nuisance to the highway can sue for and recover such special damages as they can prove.

Reduction in rental value is a recognized element of annual damage in all cases of injuries to abutting owners from the misuse of highways.

The unauthorized occupancy of a highway by a railroad company for its track is actionable if any actual damage ensues to adjacent owners, whether indictable or not.

The value of premises for dwelling purposes is a question of fact, in an action for injury to the owner from the unauthorized use of an adjacent highway by a railroad company.

Error to Kent.    Submitted Oct. 26.    Decided Jan. 11.

CASE.    Defendant brings error.    Affirmed.

*Hughes, O'Brien & Smiley* for plaintiff in error.    Injury to abutting owners from the proper operation of a railroad in the public street is *damnum absque injuria: Gould v. H. R. R. R.* 6 N. Y. 522; *Whittieer v. P. & K. R. R.* 38 Me. 26.

*H. E. Thompson* for defendant in error.    Abutting owners have valuable rights in a highway and are entitled to a remedy for injury to them: *Haynes v. Thomas* 7 Ind. 38; *Tate v. Ohio & Miss. R. R.* id. 479; *Protzman v. I. & C. R. R.* 9 Ind. 467; *Schulte v. N. P. T. Co.* 50 Cal. 592; *Lachland v. North Mo. Ry.* 31 Mo. 180; occupation of a common public highway by a railroad company with its track and business, if without legal authority, is a nuisance: *Springfield v. C. R. R. R.* 4 Cush. 63; *Com. v. N. & L. Ry.* 2 Gray 54; *Com. v. O. C. & F. Ry.* 14 Gray 93; *Com. v. V. & M. Ry.* 4 Gray 22; *Railway v. Smith* 49 Me. 9; and abutting owners damaged thereby can bring case for damages as for a private nuisance; *Del. & R. Canal Co. v. Wright* 1 Zab. 469; *Hatfield v. Cent. R R.* 33 N. J. L. 251.

CAMPBELL, J.    Mrs. Heisel sued the railroad company for damages by reason of injury to her occupancy of certain premises owned by her on which she lives within the city of Grand Rapids.    The land is used for dwelling-house purposes, containing a dwelling and outhouses, at the corner of Second and West Division streets, being one hundred feet on each of those streets.    Most of the neighboring property is used for various business purposes.    The railroad which is the source of the injury is laid on West Division street, and by means of a main and a side track occupies the portion of the street adjacent to her lot so as to leave little if any available space outside of the tracks.

· This case was before this court at the October term of 1877 and decided in January 1878.    *G. R. & I. R. R. Co. v. Heisel* 38 Mich. 62.    On that occasion several points were passed upon which narrowed the controversy on the trial now under review, and left very little to be disputed except the questions touching damage to rights of occupancy, so that the jury have now only given damages for that, during the six years prior to suit—assessing them at $350, or a little less than $60 a year.

Upon the former trial she had been allowed to recover on the basis that she owned the fee of the land actually covered by the tracks, but it was our opinion that the peculiar language of her deed excluded the presumption that it went beyond the street lines, and therefore that she was not entitled to be compensated as owner for the taking of her land, but must be confined to such damages as would affect her as adjacent occupant and proprietor.

It appears from this record that Mrs. Heisel's title was obtained in 1867, before the railroad was built, and that she built on and occupied the lot in 1869 and moved into her house in 1870, after the main track but before the side track was built.    Evidence was given tending to show injuries to the wall of her house, and annoyances of various kinds from smoke, cinders, steam and noise, and obstruction of the way, and testimony was put in concerning the effect on rental value.    There was more or less evidence on both

sides bearing upon the value and suitableness of the property for dwelling-house purposes. Most of the assignments of error relate to the charge of the court—a few, however, going to rulings on testimony.

As the case is now presented there does not appear to have been authority from any one for the occupancy of the street until 1873, when the city of Grand Rapids seems to have consented to the occupancy of the east half of the street, but no consent was obtained from and no damages assessed to all of the adjacent occupants.

A considerable part of the errors assigned rest on the claim that Mrs. Heisel, by reason of not owning the fee of the street occupied by the railroad, is cut off from any claim for substantial damages, and is not concerned with the lawfulness or unlawfulness of the use of the highway. Nevertheless as this is in our judgment material, and was so declared in our previous decision, it is necessary to refer to it.

We held in our previous decision that the use for an ordinary railway of a public street was not within the dedication. It must necessarily follow that the representatives of the public cannot give away what does not belong to the public, and such has been the law recognized in this State from the beginning and is clearly expounded in *Cooper v. Alden*, Har. Ch. 72, where the action of the common council of Detroit in granting power to occupy a street for such purposes, without the consent of the adjacent owners, was held unlawful. In that case the owners set up no title in the bed of the street, although they may have owned it, and the case was decided upon the rights of adjacent ownership and occupancy. In that case, as in this, the right of the Legislature to authorize such use did not come in question, for no such authority was shown to occupy the street in question.

It has been quite as well settled that the persons who have dedicated or platted lands and sold lots on streets or other public spaces, cannot thereafter withdraw or change the use of such public spaces to the detriment of their grantees, and the destruction of their rights in the street or public grounds

on which their lots abut. *Sinclair v. Comstock* Har. Ch. 404;
*Smith v. Lock* 18 Mich. 56; *White v. Smith* 37 Mich. 291.

Previous to the revision of the railway law in 1871, cor-
responding in this to that of 1873, the general railroad law
contained no authority for the use of streets, if they could
be used at all, without recourse to the ordinary methods of
condemnation, beyond the right of crossing.  Gen. R. R.
Law § 17 sub. 5.  No road could enter a city at all without
permission.  § 29.  And any change in a highway made
necessary by a crossing required the same proceedings for
condemnation of land as in other cases.  § 28.

In 1871 occurs the first authority which is given in terms
to lay railroads in streets, and this is done by an amendment
of what was formerly subdivision 5 of § 17 (Comp. L.
§ 2414: L. 1873, p. 505). This requires not only the consent of
the common council on such terms and conditions as shall
be agreed upon, but payment of damages and compensation
to the owners of property adjoining the street, and opposite
where the railroad is to be constructed, to be ascertained
either by agreement or by the mode prescribed in the act
"for obtaining property or franchises for the purpose of its
incorporation."

If the railroad company had undertaken in any legal way
to obtain the right to occupy the street previous to 1873,
and had obtained a condemnation of the line occupied, the
question of any power to occupy a street except for cross-
ing, and the question what rights could be reached and con-
demned under the statute so as to give a title to lay and use
the railway there, would both become material.  It has been
a matter of some difficulty to determine how far private
interests may lawfully be interfered with, when not actually
granted or condemned.   But there can be no doubt what-
ever that any entirely unauthorized interference with any
recognized right whatever, is a good ground of action.   In
the present case there was no lawful occupancy or any claim
of permission from the city, shown prior to 1873, and no
pretence of authority from plaintiff at any time.   She has
not been cut off by any supposed grant or condemnation,

and the road was laid without her consent. She is therefore entitled to damages for such injury as she has suffered from the continued aggression.

It is therefore necessary to consider what view the law has taken of this class of injuries. We are not called upon to consider to what extent, if any, the continued use of an unauthorized railway would be ground of damage, as a nuisance from noise, smoke and cinders, because the court below limited recovery for any such cause to injuries from unusual conduct in that regard. There was some evidence not only of such conduct, but that it was malicious and intentional, and this was, therefore, a question for the jury.

Beyond this she was certainly entitled to show such damages as would have been properly open to consideration by a jury of inquest called on to assess her compensation under the statute. Our American statutes, including our own previous to our statute of 1873, have been defective in not generally providing any statutory remedy for persons injuriously affected by the construction of public works, with the single exception of those who have had property taken specifically. But the statute now in force and before referred to has provided for the most important of these cases, in favor of adjacent proprietors whose situation on public or other ways makes them the real parties most injured by their use for railways, and has to this extent relieved the law from an anomaly which the English statutes have always guarded against. The English courts in construing their statutes have usually applied them, when they could do so, as covering such damages as would have been actionable if no authority had been given to do the injurious acts. And there has been no serious difference between the English and American courts, in defining actionable rights. And where the company has not brought itself within the statutes the common-law action has been fully maintained.

It need hardly be said that nothing can be fairly termed compensation which does not put the party injured in as good a condition as he would have been in if the injury had

not occurred. Nothing short of this is adequate compensation. In the case of land actually taken, it includes its value, or the amount to which the value of the property from which it is taken is depreciated; and in *Jubb v. Hull Dock Co.* 9 Q. B. 443, it was held that where the property taken was a brewery in operation the damages included the necessary loss in finding another place of business. In cases where damage is by injury aside from actual taking of property, the rule has been to make the party whole as nearly as practicable, and where it affected the rental value or enjoyment the same principle has been applied as in other cases. There is no reason and so far as we can discover no law which allows the wrong-doer to cast any portion of an actual and appreciable loss on the party whom he injures. In such a case as this it is in the power of the company and always has been to have the compensation settled once for all, and to get any benefit which the law attaches to such a method of ascertainment. Until this is done the possession is a continuous wrong for which—as intimated in our former decision—the amount accruing year by year is recoverable. The following are cases where the damage done was as in this case distinct from the actual taking of property from the party injured: *Glover v. North Staffordshire Rw. Co.* 5 E. L. & Eq. 335; *Watkins v. G. N. Ry.* 6 E. L. & Eq. 179; *E. & W. India Docks & Birmingham Junc. Rw. v. Gattke* 3 E. L. & Eq. 59; *London & N. W. Rw. Co. v. Bradley* 5 E. L. & Eq. 100; *Queen v. Vestry of St. Luke's, Chelsea* L. R. 6 Q. B. 572: affirmed, 7 Q. B. 148; *Stoneham v. Brighton & S. Coast Rw.* L. R. 7 Q. B. 1 (where it was held that payment to the owner of the fee did not cut off the right of commoners to sue for damage to the common); *Holt v. Gas Light & Coke Co.* L. R. 7 Q. B. 728; *Eagle v. Charing Cross Rw. Co.* L. R. 2 C. P. 638; *Beckett v. Midland Rw. Co.* L. R. 3 C. P. 82; *Knock v. Metn. Rw. Co.* L. R. 4 C. P. 131; *McCarthy v. Metn. Bd. of Works* L. R. 7 C. P. 508: affirmed, 8 C. P. 191.

The case of *McCarthy v. Metropolitan Board of Works* L. R. 7 C. P. 508; affirmed in Exchequer Chamber 8 C. P.

191, and again in the House of Lords 7 H. of L. 243, was one where the damage done was somewhat more indirectly than here, but where the doctrine was distinctly asserted in the House of Lords that the damages should be commensurate with the injury.

There is in England power in any aggrieved party as well as the public company to resort to the statutory remedy of appraisal, and enforce his demand in that way. Here the statute makes no such provision, and until the proper body has passed upon the necessity of the railway as laid, the question of compensation by statutory appraisal cannot arise. If the company does not move, the party injured has a right of action in the ordinary way. *Harlow v. Marquette, H. & O. R. R. Co.* 41 Mich. 336.

Counsel for plaintiff in error presented the case under a few heads which bring up all the questions of permanent importance. Some of them we have already referred to, and the principal one, which relates to the special rights of adjacent owners, was fully recognized and passed upon when the case was formerly before us. Such persons have always been allowed to sue—in case of a public nuisance to highways, as liable to special damage, and to recover what they prove. The railroad law has expressly recognized the right, and provided for assessing the damages. We also decided before that the occupation of a highway by a railroad, was not within the dedication, and must be authorized as a new use before it can be lawfully maintained.

It was necessary to a full understanding of the case that the jury should know all the circumstances of the occupation and the injury; and the court used a good deal of care in cautioning the jury to avoid giving damages for what was deemed covered by the rulings made by this court. They were instructed to give no damages for permanent diminution of value, and none for the appropriation of the soil of the street, but only such as would result from the interference with the natural advantages of the frontage, or for actual injuries from unusual annoyances from unusual management. The reduction in the rental value during the years

sued for was allowed as a reasonable test, and we think very properly. The jury were instructed to consider the benefits to value accruing from the building and occupation of the road if any. There was evidence for and against the value for dwelling purposes, and that was a question of fact. The reduction of rental value is a recognized element of annual damage in all cases of injuries from misuse of highways. And there can be no question that such an occupation of a highway, without authority, is actionable if any actual damage ensues to the adjacent owners, whether indictable or not. The parties swearing to the effect on rental value seem to have been competent witnesses on that subject, and the jury evidently made allowances for overestimates. If there was any right of action at all, we do not think the court erred in the instructions on the other questions, and there is nothing to indicate that the jury were in any way misled.

The judgment should be affirmed with costs.

The other Justices concurred.