LOUIS RIEDINGER v. MARQUETTE & WESTERN RAILROAD COMPANY AND DETROIT, MACKINAC & MARQUETTE RAILROAD COMPANY.

| 62 | 29 |
| 62 | 47 |
| 62 | 29 |
| 87 | 372 |
| 62 | 29 |
| 91 | 292 |
| 62 | 29 |
| s28NW | 775 |
| 133 | 106 |

*Platting land by mining corporation—Dedication of streets to public use—With reservation of right to lay and use plank or railroad track therein for purposes of its business—Conveyance by corporation of lot abutting on said street, with reservation of portion then used or occupied for railway purposes—Grant cannot be afterwards cut down by conveyance by corporation of additional rights in lot not covered by such reservation—Lot-owner may appeal to equity court for relief by injunction—Which will be granted unless additional rights in his lot and adjoining street, claimed by defendant, are acquired by purchase or by condemnation proceedings.*

In this case the Court, on a review of the facts (see opinion), reversed the decree below, and substantially granted the relief prayed for. To state the *exact* points decided involves a summary of the opinion in the head-notes, which is deemed undesirable.

Appeal from Marquette. (Grant, J.) Argued February 3 and 4, 1886. Decided June 24, 1886.

Bill filed to perpetually enjoin defendants from constructing a railroad over or across certain streets opposite com-

plainant's land, and to declare void certain privileges granted by the city of Marquette to the defendant first named, etc.

Complainant appeals. Decree reversed, and case remanded with directions, etc. (see opinion).

*William P. Healy (Isaac Marston,* of counsel), for complainant.

*Ball & Hanscom,* for defendants.

SHERWOOD, J.. The Cleveland Iron Mining Company was organized in April, 1853, under the act of February 5, 1853, for the purpose of iron mining in the county of Marquette, in the State of Michigan, and became the owner of an iron mine near Ishpeming, in said county, and also the owner of a parcel of. land on the shore of Lake Superior, which the company platted into lots and streets, in September, 1854, and caused the plat to be duly filed, and said parcel now forms a part of the city of Marquette. In making the plat, and dedicating the same, the company made a reservation referring to the streets therein, in the following language:

"Reserved to the Cleveland Iron Mining Company, and their assigns, forever, the exclusive right to lay a plank or railroad track through and across any of the streets recorded in this map; also the exclusive right to use the same, with cars, engines, or any other vehicle they may choose; also the right of conveying, through pipes or otherwise, the water of Harlow's spring, or any other waters, through any of the streets of this plat, forever."

There are, in the plat referred to, two blocks numbered, respectively, 2 and 3. In each of these blocks there are 22 lots. On the east side of these two blocks is Front street, it being 66 feet wide, and about 250 feet from the lake front as it is now established. Between the two blocks runs Superior street east and west, 100 feet wide, extending to the lake. The dock of the Cleveland Iron Mining Company is at the foot of this street, and standing near the same and on the south side thereof.

The plaintiff is the owner of lot 2 in block 3, lying in the

south-east corner of the block at the junction of Front and Superior streets, extending 30 feet on Front street and 124 feet on Superior street. These streets intersect each other at right angles.

At the time of filing the plat the Cleveland Iron Mining Company had constructed the said dock upon its water front, for shipping ore and receiving merchandise, and had a strap iron railroad, the cars of which were moved by horses or mules, extending from the dock westerly, across both of said streets at their junction, and diagonally across the northern portion of block 3, on to the mine of the company. The track crosses, in passing through the block, the extreme south-west corner of lot 2.

In 1857 and 1858 two additional tracks down Superior street, just south of the original track, and extending onto a trestle-dock, were built, and these three tracks were continued in use by the company down to 1871, and operated by locomotives from 1858; and the two leading to the trestle-dock continued to be so operated until they were sold to the defendant the Marquette & Western Railroad Company. Since 1857 the railroad had been doing a large and constantly increasing business, in shipping iron ore, pig-iron, and general merchandise, until in 1883, when there was shipped over these tracks something over 200,000 tons from the Cleveland mine alone.

In 1883 the Marquette & Western Railroad Company was engaged in building a railroad from Marquette to the iron mines at Negaunee and Ishpeming, and purchased of the Cleveland Iron Mining Company, at Marquette, its entire water front, shipping dock, railroad tracks, and land occupied thereby, all its reserved rights in the streets, and its real estate remaining unsold, and the parcel of land platted as aforesaid.

The reserved rights in the streets referred to are the same quoted above, and contained in the same language.

The plaintiff's lot was sold by the Cleveland Iron Mining Company to William J. Gordon and Peter White on the twenty-second day of August, 1857, by warranty deed, for

the sum of $4,300; the conveyance containing the following clause :

" Reserving therefrom all that part of said lot above described which is now used and occupied by said Cleveland Iron Mining Company for railroad or railway purposes, to be used and occupied by the said Cleveland Iron Mining Company, its successors or assigns, so long as needed or desired by them for the right of way for said railroad or railway purposes."

The lot was described in this deed by metes and bounds, and on the south by the north line of Superior street.

On the fourteenth day of June, 1865, Gordon conveyed his interest in lot 2 in block 3, by warranty deed containing the same reservations, to Peter White, and the complainant made his purchase of this lot of Peter White in March, 1869, receiving his deed therefor on the second day of December, 1872 ; it being a warranty deed, and containing the same reservations as mentioned in the conveyance of the property by the Cleveland Mining Company to said Gordon and White.

From the time of complainant's purchase of this lot, down to the time of the commencement of this suit, he used and occupied the property in his own business, renting some parts of the building as he could spare the same.

About the month of October, 1883, after the Marquette & Western Railroad Company made its purchase, it began grading, for the purpose of bringing its ore cars on the trestle, and for that purpose it was necessary to bring them upon the tracks crossing Front and Superior streets. It was also the purpose of defendant to change the tracks further to the south upon Superior street, and add another track crossing said streets. The work of grading to make such connection with the tracks purchased of the Cleveland Iron Mining Company, as before mentioned, continued until the grade had been completed and its tracks laid to the east side of Front street, and it was about to proceed with the work of grading across Superior street.

At this time William Ward and James Dwyer, who owned

the land on the south-west corner of Front and Superior streets, and who claimed that the changes proposed to be made by the Marquette & Western Railroad Company were unlawful, and, if completed, would seriously injure their property, obtained a writ of injunction restraining the further progress of the work, on the nineteenth day of January, 1884, which was afterwards dissolved upon the defendants giving a bond. One of the grounds taken in the Ward and Dwyer bill was that the right of way across or in the streets had not been granted to the defendants by the city, and, on the sixth day of February following, the common council of the city passed the following resolution :

" Whereas, the Marquette & Western Railroad Company has applied for permission to lay its tracks and run its cars in Front and Superior streets, as shown on a plan this day filed with the recorder:

" Resolved, that said Marquette & Western Railroad Company, and its successors and assigns be, and are hereby licensed to construct and operate and maintain, for general freight, ore, and passenger business, a double track along the line now surveyed therefor, from the east line of Front street, north-westerly, across Front and Superior streets, to the north line of Superior street, so as to intersect and connect with the Cleveland Railroad track at or near the north line of Superior street, as shown on a map thereof filed with the recorder by the manager of said company; and also to build a trestle and such railroad tracks as they may require, easterly, from a point in said track east of Front street, to the new ore dock to be built by said company, as shown by the map aforesaid : *Provided*, that this resolution shall never be construed to divest the city of its control over said streets, or its right at all times to prescribe by ordinance the manner of running cars thereon, and to regulate the operation of said railroad as the public convenience or necessity may from time to time require."

The defendant Marquette & Western Railroad Company, after the dissolution of the injunction in the Ward and Dwyer case, proceeded with the work of laying its three tracks in the manner proposed, intersecting said streets at such points as the company chose. Proofs were taken in that case, and the cause heard at the Marquette circuit, and

the complainants' bill was dismissed. The case is now before this Court on appeal.

The bill in this case was filed February 15, 1884, by the complainant, Riedinger.

In addition to the facts stated hereinbefore, it avers that the Cleveland Iron Mining Company was organized for the purpose of carrying on a mining business in Marquette county; that, for the purpose of transporting ore from its mine to the lake for shipment, the company constructed its railroad, which was known as the "Cleveland Branch Track,"—at first it being no more than a tram-way, and so continued until the locomotive power was used thereon; that said mining company is a private company, organized for a private business, and the said railroad was constructed to be used in that business; that the reservation contained in the plat was made with reference to that business, and that solely; and that the location of its tracks in said streets and its yards for the accommodation of that business, at the time the complainant made the purchase of his lot, was well known to all the parties.

The complainant further avers, in the language of his bill,—

"That the reservation of the right of way made in the plat extends several hundred feet north-west of your orator's said premises, and said defendants intend to use it as a railroad yard for switching freight and passenger cars, which was never contemplated by the original reservation.

"Your orator shows that the object of said reservation was to enable the Cleveland Iron Mining Company, its successors and assigns in the mining business, to transport any and all iron ore mined by them at Ishpeming over the railroad of the Bay De Noquet & Marquette Railroad Company (now the Marquette, Houghton & Ontonagon Railroad), thence over said reservation, which connected with said last-mentioned railroad, and thence on to the said ore dock of said Cleveland Iron Mining Company; that, when said reservation was made, the Cleveland Iron Mining Company received all its ore over the said railroad of the Bay De Noquet & Marquette Railroad Company, now the Marquette, Houghton & Ontonagon Railroad Company; that said railroad of the Cleveland Iron Mining Company connected

several feet north-westerly of your orator's premises with
the yard and side tracks of the B. D. N. & M. R. R. Co.;
that there was a down grade from said yards onto the ore
dock of said mining company, whereby the ore cars ran by
their own momentum, without the aid of steam, from said
yard to said ore dock, whereby the annoyance to your orator
was reduced to the minimum, and no ore passed over there
except what was mined by said Cleveland Iron Mining Com-
pany at Ishpeming, and transported during the season of
navigation only, and such has been the course of business
over said reservation since 1857 to the present time.

"And your orator, on information and belief, shows and
avers that for more than twenty years past, to-wit, for the
past twenty-six years, the said Cleveland Iron Mining Com-
pany has used said strips, so reserved across your orator's
said premises, only for transporting its own iron ore mined
by it, and has occupied said strip during that time for no other
purpose whatever, and was only using said strip for the purpose
of transporting its own iron ore from the mines to its ore dock
in Marquette at and before the time it made said reservation;
that said Marquette & Western Railroad Company announces
that it expects to transport over its railroad at least five hun-
dred thousand tons of iron ore annually, all of which, under
the proposed plan of crossing Front and Superior streets,
must be run across your orator's said premises up grade, and
then run back again onto said ore dock (and will not be the
ore of the Cleveland Iron Mining Company, its successors or
assigns), thus carrying one million tons of ore annually across
your orator's said premises, and then, after unloading on the
ore dock, the empty cars must be pulled off, and run past
your orator's said premises, back again, so as to be sent up to
the mines for more ore; whereas, during the year 1883, the
Cleveland Iron Mining Company transported over your
orator's premises only one hundred and thirteen thousand
six hundred and seventy-five tons, all mined at its own mines
at Ishpeming, which was run on the dock without steam-
power as aforesaid.

"And your orator further shows that the contemplated
action of said railroad companies, in erecting a passenger
depot at the Tremont House, to be used during all seasons
of the year; in making a railroad yard of the railroad which
crosses your orator's premises; and in building a new rail-
road track in front of your orator's said premises, at the in-
tersection of Front and Superior streets,—will depreciate
the value of your orator's said premises one-half, and will

hinder and greatly interfere with your orator's business, if not altogether destroy it."

Complainant further avers that there is no necessity for either of the defendants crossing and recrossing said streets to reach good dock facilities on the lake front ; that equally as feasible routes are as accessible for the purpose, and at very slight additional expense, as the course now, and intended to be, taken, and which destroys the complainant's property ; that the common council has no authority to license any such use of the streets, and that their action in the matter is void ; that neither of the defendants has ever compensated the complainant for his damages in the premises, or offered to do so ; but, on the contrary, the said Marquette & Western Railroad Company intends to build a new ore dock, and use said streets to the extent it pleases, not only that portion formerly running to the mines of the Cleveland Iron Mining Company, as contemplated in the original reservation, and covering only that portion of the complainant's premises so reserved, but asserts the right to use, under such reservation, as much of complainants' ground as may be necessary or desirable for the company in doing a general railroad business. And complainant denies the defendants' right to make any such use of his land, or of the said streets, for such purpose, until it has in some legal manner acquired such right from him, and paid him his reasonable compensation therefor.

The complainant further states his claim, as to the effect of the Cleveland Iron Mining Company's action, as follows :

"Your orator shows that the aforesaid strip across your orator's premises has not been used or possessed by the said Cleveland Iron Mining Company since the first of December, 1883, and said Marquette & Western Railroad Company has not yet taken visible or actual possession thereof; that since your orator learned of the sale of the reservation of right of way across your orator's premises to the Marquette & Western Railroad Company, he has regarded it as a violation of his rights, and subjecting the reservation to forfeiture ; and your orator has accordingly peaceably entered on said right of way, and taken peaceable possession thereof, and declared said reservation forfeited, and does hereby solemnly

declare it forfeited, null, and void, and asks that said defendant railroad companies be restrained from entering on that part of your orator's said premises lately covered by said reservation. That said strip, so used by the Cleveland Iron Mining Company across your orator's premises, has reverted to your orator, because—

"1. It is no longer needed or desired by the Cleveland Iron Mining Company.

"2. It could only be used by the assigns of the Cleveland Iron Mining Company for carrying iron ore mined by them, and said Marquette & Western Railroad Company cannot engage in the business of mining iron ore, and hence cannot use said strip for the purposes for which it was reserved.

"3. Said sale to the Marquette & Western Railroad Company carves the original reservation of the Cleveland Iron Mining Company, which was indivisible in its nature, into an indefinite number of parts, being only limited by the number of mining companies that may choose to forward their ore over said railroad."

The prayer for relief is as follows:

That said defendants be restrained "from beginning or proceeding to construct a railroad over or across said Front and Superior streets, or either of them, opposite or adjoining your orator's said lands at the intersection of Front and Superior streets, until the final determination of this suit; that the privilege granted by the common council of said city to the said Marquette & Western Railroad Company, its successors or assigns, be declared void, and that such injunction be made perpetual; and that said city of Marquette be perpetually enjoined from granting any franchise at the intersection of said Front and Superior streets, which will practically destroy travel at said intersection of said streets.

"That said Marquette & Western Railroad Company, and said Detroit, Mackinac & Marquette Railroad Company, be also restrained by said writ of injunction from entering on said strip of land across your orator's said premises until the final determination of this suit, and that then such injunction be made perpetual; and that your orator may have such other relief, and such further relief, as the nature of the case may require, and as may be agreeable to equity."

The Marquette & Western Railroad Company answers the bill, and admits that Front and Superior streets run and cross each other as claimed, and are public streets. It further admits and says:

" That the Detroit, Mackinac & Marquette Railroad Company is the owner of and operating the line of railroad from St. Ignace to Marquette, and that this defendant is building a line of railroad from said city of Marquette to the iron mines near Negaunee and Ishpeming, in said county, and that they are under one management, and form connecting lines of railroad.

" It admits that during the past year it has purchased the ore dock of the Cleveland Iron Mining Company, and the other property mentioned in the fourth paragraph of said bill, and has also purchased a strip of land extending northwestwardly from Superior street to the railroad track of the Marquette, Houghton & Ontonagon Railroad Company, a portion of which is the parcel of land in the south-west corner of said lot number two, lying south of the line above described.

"And this defendant says that said strip of land, before its said purchase, belonged to the Cleveland Iron Mining Company in fee, and was purchased by this defendant from said mining company for use in operating the railroad tracks which had theretofore been constructed by the said Cleveland Iron Mining Company, and were already in operation, and also such other tracks as it should desire to construct and operate thereon.

" This defendant admits that it was, at the time of the filing of this bill, intending to build a railroad double track across the intersection of Front and Superior streets, and across Superior street, to intersect and unite with its double track already constructed across said street, so as to connect the railroad so already constructed by said Cleveland Iron Mining Company with the railroad of this defendant from Marquette to the iron mines; and that for a portion of the distance across the said Superior street, after the construction of the said new tracks, there would be, according to said original design, four tracks in said street opposite the premises of the said complainant."

And it avers its right to construct said tracks; that the reservation in the plat, and that contained in the deed under which the complainant claims, was, as matter of fact, an exception, and that the fee of the land to which it applied remained in the Cleveland Iron Mining Company, and was by it duly transferred to the defendant; that the object the mining company had in making the reservation is of no

materiality; that it is the right of the Marquette & Western road, under its purchase, to use said streets to such extent as the business of such railroad as it may construct may require; and that neither the complainant, nor the common council of the city, can complain or have any right to interfere.

Defendant, further answering, says that it admits it expects to transport over said railroad the amount of ore stated in said bill, and all it can get to transport; and denies that it will be any damage to the complainant; but, if it should be, the defendant cannot be made liable therefor. It denies there has been any forfeiture of the right to use said streets and lot by the Cleveland Iron Mining Company, and avers that said company held possession of said right of way across said lot and said streets until January 1, 1884, when said mining company delivered possession of the same to the defendant, and it has held and occupied the same ever since. It also claims the benefit of a demurrer.

The proofs in the case were taken in open court; and, after a full hearing of the case, the circuit judge rendered the following decree :

" It is adjudged and decreed that the portion of lot number two of block three of the Cleveland Iron Mining Company's plat of the city of Marquette, which is occupied by the said Marquette & Western Railroad Company, and is claimed by the said complainant in his bill as his property, was excepted from the conveyance of the Cleveland Iron Mining Company to William J. Gordon and Peter White, made August 22, 1857, as set forth in the pleadings in this case.

"And it is further adjudged and decreed that the said Marquette and Western Railroad Company has, as against the said Louis Riedinger, a right to construct and operate its tracks across Superior and Front streets in the manner in which the same have been constructed and are now operated, and as the same were about to be constructed at the time of filing said bill.

" It is further ordered, adjudged, and decreed that the said complainant's bill be and the same is hereby dismissed (but without prejudice to any proceedings that may be hereafter instituted by the complainant to establish a right of way or passage across said strip of land so excepted, to the west end of said lot number two, if he shall deem himself

entitled thereto), and that the said complainant pay to the defendants their costs and charges in this suit, to be taxed, and that the said defendants have execution therefor."

The complainant appeals to this Court.

No question is raised touching the proper execution of the plat, nor that it was duly accepted. The answer admits that the streets thereon have been in use by the public more than twenty years.

The defendants, organized under the railroad laws of this State, claim the benefits of the reservation made by the Cleveland Iron Mining Company in the plat, as its assignees or grantees, and the right to construct their roads in and across Front and Superior streets in front of the complainant's property, to be used for all kinds of railroad purposes, irrespective of any damage he may sustain thereby, and without condemnation or making any compensation therefor.

In the view I take of the case, the reservation contained in the plat is entirely immaterial, whether valid or invalid.

There can be no question, I apprehend, but that the plat, under the facts stated in the record, must be regarded as valid. This being the case, the city of Marquette possesses certain rights and powers over the added territory, and the streets therein, that cannot be controlled by such reservations as are herein made, if against public policy or public welfare; and courts would certainly not allow them to be so used as to destroy or impair private property if they were ever so intended; but there is no reason to believe that any such object was intended when the proprietor caused the plat to be made and filed.

The reservation in the plat, if good, was one against the city or public right. The plat, so far as the streets are concerned, is no more than a dedication or conveyance of the same for the use of the public, and no rights, if attempted, can be reserved by the proprietor inconsistent with the purpose of the dedication, or which would at least modify it, so far as purchasers of lots and the public are concerned.

This seems to have been understood by the Cleveland Iron Mining Company, as relates to purchasers of lots, because, in

its conveyances to such parties, the reservation contained in the plat is not referred to in the deeds.

The action taken by the common council of the city of Marquette has no bearing upon the questions involved between these parties. It gave the defendants the right, so far as it could, to use the streets of the city upon which to construct their tracks and operate their railroads. This, however, would not authorize the defendants to so manage and control the streets as to prevent their reasonable use as highways by the citizens, or to use them in such manner as to injure or destroy private property abutting on the streets, without condemnation or recompense.

The rights of the parties in this case must be determined by a proper construction of the several deeds under which they claim from the Cleveland Iron Mining Company, and the statutes relating to it, and the defendants' right to take, hold, and enjoy real estate.

The complainant obtained his rights in lot 2, whatever they may be, through the deed of the Cleveland Iron Mining Company to Gordon and White, and from Gordon to White, and from White to complainant, with such other interests therein, if any, which have become appurtenant thereto through user or lapse of time. The complainant's interest was first secured by contract from Peter White, dated March, 1869, under which the complainant went into possession, and which was continued until the commencement of this suit. The complainant received his deed in December, 1872. The description of land contained in the deed, and the reservation relating thereto, are as follows:

" All that certain piece or parcel of land situate and being in the city of Marquette, county of Marquette, and State of Michigan, bounded and described as follows, to wit : So much of lot two (2), in block three (3), of the Cleveland Iron Mining Company's division plat of said city bounded as follows, to wit : Commencing at the south-east corner of said lot No. two (2), at the corner of Superior and Front streets ; running thence northwards, along the west line of Front street, thirty feet ; thence westwardly, in a line drawn parallel with the south line of said lot, to the west end thereof, one hun-

dred and twenty-four feet; thence southwardly, along the west line of said lot, thirty feet, to Superior street; thence eastwardly, along the south line of said lot, same being the north line of Superior street, to the place of beginning;— subject, however, to all the reservations for railroad or other purposes mentioned in the deed from said Cleveland Iron Mining Company to W. J. Gordon and Peter White, bearing date August 22, 1857, and recorded in the registry of deeds of Marquette county, in Liber B of Deeds, on pages 428 and 429 : *Together* with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining."

The reservations referred to are those hereinbefore given. The contract antedates the conveyance to the Marquette & Western Railroad Company fifteen years, and the complainant received his deed three years later.

When the complainant received his deed the plat had been on file, and Front and Superior streets used, more than eighteen years, and the complainant's lot had been built upon and used several years before the complainant's purchase from White.

The conveyances making up the complainant's chain of title are all warranty deeds, and convey the fee of the property discharged from liens and incumbrances except such as may be included in the reservation contained in the Cleveland Iron Mining Company's deed to Gordon and White; it being the same made and referred to in White's deed to the complainant. It therefore becomes most important to ascertain the scope and extent of this reservation.

Both of these defendants came into existence by virtue of the statutes of our State, and are controlled and limited in all they do thereby, and the same is true of the Cleveland Iron Mining Company. The right of this latter company to convey the lot 2, by deed, with the reservation in question, to the complainant's grantors, is not questioned ; neither is there any question in my mind but that the complainant is the owner of the fee of said lot, subject only to such interests therein as are properly included in said reservation. The language of the reservation has hereinbefore been given.

It secures to the Cleveland Iron Mining Company, and to its successors and assigns, so long as needed or desired for railroad or railway purposes, the right of way across the south-west corner of the said lot as it was *then* "used and occupied by the Cleveland Iron Mining Company;" meaning on the twenty-second day of August, 1857.

It is of but little significance by what terms this clause in the deed shall be recognized or designated in giving it effect in this case; and I quite agree with Chief Justice Campbell wherein he says, upon this subject, in the case of *Hall v. Ionia*, 38 Mich. 498:

"The general and, as we think, the correct method of construing such provisions as those in question, is to give them the force which the deeds evidently intended they should have."

It seems very clear to me that the extent of the reservation, under the testimony contained in this record, was, at the time it was intended to take effect, limited to the right of way across complainant's lot for a single track; and that it cannot be extended beyond that by the Cleveland Iron Mining Company or its grantees, against the owner's consent, without condemnation, is, in my judgment, equally clear.

I think, further, that the complainant's right to cross and recross the said right of way, to gain access to and make use of the west end of his lot, was not intended to be cut off by the easement mentioned in the reservation; that the complainant's constant exercise of such right to cross said right of way for more than twenty years, with the full knowledge and consent and without objection on the part of the Cleveland Iron Mining Company, renders any other construction of the extent of the easement reserved unreasonable as evidenced by the action of all the parties interested. Such right of crossing and recrossing therefore becomes one of a substantial nature, and of value to the complainant, and entitled to protection in a court of equity.

The business of the Cleveland Iron Mining Company was mining. Its mines were near Ishpeming, several miles away

from the lake, where its ore had to be hauled. It owned a large lake front, and a dock located thereon, and the company, for the purpose of facilitating the transportation of its ore to its water front, constructed a private railroad from its mine to its dock on the lake.

When the company platted its grounds, as hereinbefore stated, the streets were evidently laid out with reference to bringing the company's railroad over the plat, and down one of its streets, to the dock. It is very evident, from the language used in the reservation stated in the plat, that then but a single track was contemplated, and the street through which it was to pass was laid out 100 feet wide, instead of 66 feet, as were the others. This increased width was undoubtedly intended to secure sufficient space in the street for the railroad track, and to prevent its interference with the ordinary business and travel upon the street.

I do not think, from what I have been able to discover in the record, that the complainant, when he made the purchase of his lot, or when the company made the reservation under which defendants now claim in this case, it was in the mind of any of the parties that the Iron Mining Company's railroad was ever to be used as a common carrier, or for general railroad purposes, but only as a private road, in connection with the company's mines, for the purpose of carrying its ore to its water front on the lake. And the complainant, who now owns this valuable lot, well built up and abutting on said street, objects to the use made of it by the defendants, who claim to make such use as owners of said railroad, and the reserved rights contained in the company's deed to them, and to construct in said street, in front of his property, several additional tracks, and carry thereon, not only the iron ore from the Cleveland Iron Mining Company's mine, but carry on a general railroading business to such an extent as to prevent the use of the street for any other purpose, and make travel on the same dangerous, and create such noise and confusion as to greatly impair his business and depreciate the value of his property ; and he seeks the aid of a court of equity to prevent such unlawful encroach-

ment upon the street and such unjust infringement upon his rights.

I have no doubt of his right to the aid he seeks, and I think the circuit judge erred in holding otherwise.   *Grand Rapids & I. R. R. Co. v. Heisel*, 47 Mich. 398 ; *Cox v. Freedley*, 33 Penn. St. 124 ; *Jarstadt v. Morgan*, 47 Wis. 245 ; *Kneeland v. Van Valkenburgh*, 46 Wis. 434; Ang. Hghw. and cases cited.

Whether the dedication of the streets to the public, contained upon this plat, is valid or not, the purchaser of a lot fronting upon such street has the right to have the street kept open for the usual and customary methods of travel. The grantor " cannot thereafter withdraw or change the use of such public spaces, to the detriment of the grantees, and the destruction of their rights in the street or public grounds on which their lots abut."   *Grand Rapids & I. R. R. Co. v. Heisel*, 47 Mich. 396 ; *Smith v. Lock*, 18 Id. 59 ; *White v. Smith*, 37 Id. 291.

In none of the deeds given by the Cleveland Company, under which the complainant claims, is there any exception or reservation of any right in the streets.

In a grant of land, all which is necessary to the beneficial enjoyment of the thing granted, and which it is in the power of the grantor to convey, will pass, unless expressly reserved in the deed of conveyance.   The free use of a street in a city devoted to business purposes is absolutely necessary to the full and beneficial enjoyment of all the rights contained in the grant of abutting property thereon ; and, when a party is deprived of such use, to turn him over to the uncertain and usually inadequate remedy at law would be a poor apology indeed for proper redress.   Courts will never allow such destruction of property, so long as an effective preventive remedy exists, and is properly invoked, as in this case. :

It is difficult to conceive of any justifiable ground which can be urged for the course taken by the defendants.

The Cleveland Iron Mining Company could not legally make any such encroachments upon the street, producing the

injury complained of, and certainly it could not transfer the right so to do to the defendants, or either of them, and, under the law which allows them an existence, they could only do what they have done, and propose to do, legally, when properly organized for that purpose, after condemnation had, and reasonable compensation made for all damages.

The decree must be reversed, with costs of both courts. The case must be remanded to the circuit for such further proceedings as may become necessary; and, unless within such reasonable time, not exceeding six months, as the circuit judge may determine and designate, the defendants shall, in some legal manner, obtain the right to the easement they desire in the complainant's premises and in said streets for the exercise of the franchises they now claim, and make proper recompense therefor, and for the injury already sustained by the complainant, the injunction must be revived and made perpetual.

MORSE, J., concurred.

CHAMPLIN, J., concurred in the result.[1]