## BABCOCK *v.* HEENAN.

1. EQUITY—INJUNCTION—PARTIES—COMPLAINANT—FORMER OWNER.
   A minor who purchased a parcel of land in the name of his mother and later sold the premises to third parties was not a proper party complainant in a suit to enjoin the closing of a street which the owners had represented to him was dedicated or open to the public. But since an amendment would have been proper on motion or objection, the court on appeal will treat the same as having been done, no harm resulting to defendant from treating the amendment as made.

2. SAME—STREETS—DEDICATION.
   After making representations concerning the opening or dedication of a street, the owners could not later change their intention to dedicate, to the injury of one who purchased adjoining property in reliance on the existence of the street, or as to his grantee or vendee.

3. SAME—HIGHWAYS AND STREETS—OBSTRUCTION.
   The erroneous description of the town or range in which a parcel was situated could be and was rightly amended on the hearing, when the error was merely technical and not prejudicial to appellants.

Appeal from Sanilac; Beach, J. Submitted January 13, 1916. (Docket No. 10.) Decided September 27, 1916.

Bill by Roscoe W. Babcock and another against James Heenan, James McCaren, and another, to enjoin the obstruction of a street or highway. From a decree for complainants defendants appeal. Affirmed.

*H. V. Babcock,* for complainants.

*C. F. Gates* for defendants.

BIRD, J. Complainants seek by this proceeding to restrain defendants from interfering with their use

of a strip of land 4 rods in width by 40 rods long, situate in the city of Sandusky, which they claim is a public street. The chancellor granted the relief prayed for, and defendants have appealed.

The case made by complainants in their bill is, in substance, that on January 1, 1904, complainant Babcock purchased from defendant McCaren a 14-acre tract in the village of Sandusky. That previous to the purchase thereof, and while defendant McCaren and his agents were endeavoring to make the sale to him, they exhibited to him a surveyed plat, which showed the 14-acre tract. The plat also showed another tract of similar size lying west of it, which had been subdivided. Through this latter tract the plat showed a 4-rod strip running from Elk street on the west to the 14-acre tract, which complainant afterwards purchased; that defendants pointed out this strip on the plat, and stated that the same was reserved for a public highway, and complainant Babcock shows that he would not have purchased the said 14-acre tract had he not been assured of the use of this street, as there was no other way of reaching the 14-acre tract without passing over the premises of other persons. He further shows that some time after he purchased the tract, defendant McCaren conveyed the said tract to Heenan, who owned land immediately adjoining on the south, and that said Heenan in 1913 closed said street and denied complainant Corbishley, the grantee of said Babcock, the right to use the same.

1. Defendants raise the question that neither complainant has any standing in court, because not proper parties. This contention arises out of the fact that when complainant Babcock purchased the tract, he had not reached his majority, and he elected to have the title placed in his mother, so that it would be more easily conveyed if he desired to sell it. The testimony shows without contradiction that he carried on the

negotiations which resulted in its purchase, and afterwards its sale, and that his money was invested in it. Whether he would have had sufficient interest to maintain the suit had it been commenced while the title was still held by the mother, it is unnecessary to decide. Three months before suit he disposed of the premises by causing them to be transferred by his mother to Corbishley. This left him without any legal or equitable interest in the premises. The objection as to him as a party appears to be well taken. At the time the suit was commenced, Corbishley had both the legal and equitable title, and therefore was a proper party. Upon motion the proceedings might have been amended by striking out the name of Roscoe Babcock, as complainant. In view of this we will now consider that, as having been done, it not appearing that any harm resulted to defendants' case by reason of his having been made a party.

2. The testimony convinces us that complainant Babcock purchased the 14-acre tract in reliance upon the representations of the defendants that the strip was a public street. Upon the question whether this strip was a public street the testimony was somewhat conflicting. The chancellor, after hearing the testimony, was impressed that it was. The surveyed plat was not of record, and it does not appear that there was ever a formal dedication of the land for a public street, although the public used it to some extent as a street, both before and after complainant purchased, and the city authorities treated it as such. The city placed a crosswalk at the end of the street at Elk street, and refrained from assessing it from 1904 to 1914. The testimony of the surveyor who surveyed the tract is rather convincing that it was the intention of the defendants at the time the survey was made to make a public street of it. And the testimony of some of the defendants shows that it was their intention

to make a street of it prior to the time they sold the 14-acre tract to Babcock.

But it is argued that if defendants had intended to make a public street of it after they sold the 14-acre tract to complainant, they had a right to change their intentions concerning it. If defendants sold the 14-acre tract to complainant on the strength of the existence of a street connecting it with Elk street, they would have no right to change their intentions, at least so far as it affected its use by complainant Babcock and his grantee. It is certain that the city understood that there had been a dedication or it would not have refrained from assessing it. Neither would it have constructed the crosswalk at the end of it. If the defendants had changed their intentions about making it a public street, they ought to have advised the city of the fact when they saw it constructing the crosswalk. In *Ruddiman* v. *Taylor*, 95 Mich. 547 (55 N. W. 376), which involved a similar proposition, it was said that:

"It is well settled in this State that persons who have dedicated or platted lands and sold lots on streets cannot thereafter withdraw or change the use of such public streets to the detriment of their grantees, especially where the public have evinced an acceptance of the dedication by performing highway labor on such streets. *Sinclair* v. *Comstock*, Har. Ch. 404; *Smith* v. *Lock*, 18 Mich. 56; *White* v. *Smith*, 37 Mich. 291; *Grand Rapids, etc., R. Co.* v. *Heisel*, 47 Mich. 393 [11 N. W. 212]."

Upon a review of the whole record, we are inclined to agree with the conclusion reached by the chancellor that the strip of land in controversy is a public street.

3. The complainants in describing the strip in dispute misstated the "range." The court permitted them to correct this by amendment on the hearing, and exception is taken thereto. The error was a technical

one, and misled no one.   The amendment was very
properly allowed.

The decree of the trial court will be affirmed, but
without costs to either party.

STONE, C. J., and KUHN, OSTRANDER, MOORE,
STEERE, BROOKE, and PERSON, JJ., concurred.