### BUTTERS SALT & LUMBER CO. v. VOGEL.

1. STATUTE OF FRAUDS—GOODS SOLD—CREDIT.
   Charging goods to the person receiving them is not conclusive that they were sold upon his credit. *Larson* v. *Jensen,* 53 Mich. 427.

2. SAME—VERBAL GUARANTY.
   A verbal promise to a merchant to pay or guarantee the account of a third person, who is working for the promisor, is within the statute of frauds. *Studley* v. *Barth,* 54 Mich. 6.

Error to Mason; Beardsley, J. Submitted January 29, 1902. (Docket No. 88.) Decided March 18, 1902.

*Assumpsit* by the Butters Salt & Lumber Company against Albert Vogel for goods sold and delivered. From a judgment for plaintiff, defendant brings error. Reversed.

*Fitch & Reek,* for appellant.

*Henry C. Hutton,* for appellee.

MONTGOMERY, J. The plaintiff, in 1898 and 1899, was conducting a store at Walkerville, Mich. William Weicksall was a contractor, under contract to cut, haul, and deliver certain logs to defendant. Soon after commencing operations, in September, 1898, Weicksall began to trade

130 MICH.—3.

at plaintiff's store at Walkerville. From the 23d of November until the close of operations in the spring, the plaintiff furnished merchandise to Weicksall, which was not paid for, amounting to $138.64. This action is brought upon the theory that the credit for these goods was extended solely to the defendant, and upon that theory the plaintiff prevailed below, upon a special finding of facts and law, and the case is brought here for review; the chief contention being that the evidence did not support the finding of facts.

The question is whether the testimony shows that the promise made by defendant was an original promise or a collateral one. Mr. Smith, who was a clerk in the employ of plaintiff, testified as follows as to the original agreement:

"Mr. Weicksall was an entire stranger to me, and he came there and ordered goods, and I told him I could not do it, and he said he was logging for Vogel; and then Mr. Vogel came up, and I asked him about this man (Weicksall), and he said Weicksall was working for him, and he should have to have goods, of course, to carry on his camp, and he would just as soon that he would get them of us as anybody else, and he would see that the account was paid; and every time Mr. Vogel came to Walkerville I would ask him about the account, and he said that the account was all right, and he would pay it, every time I would see him; and I think I can prove that I did say that. I think that was about all the conversation there was.

" Q. You did, then, let Mr. Weicksall have goods after that?

"A. Yes, sir.

" Q. You did let Mr. Weicksall have goods out of your store?

"A. Yes, sir.

" Q. To whom did you sell the goods, Mr. Smith?

"A. I should not have sold them to Weicksall without the guaranty.

" Q. To whom did you sell these goods,—to Mr. Weicksall or to Mr. Vogel?

"A. Mr. Weicksall got the goods on his (Vogel's) order."

On cross-examination witness testified:

"*Q.* You stated, Mr. Smith, that you would not have sold these goods to Mr. Weicksall without the guaranty of Mr. Vogel?

"*A.* I did.

"*Q.* You did sell them to Mr. Weicksall upon that guaranty?

"*A.* Yes, sir.

"*Q.* To whom was the charge made, if any, on the books?

"*A.* It was in Mr. Weicksall's name."

Redirect examination:

"*Q.* Why did you make the charge on the books to Mr. Weicksall?

"*A.* Because it was Weicksall who got the goods under Vogel's order.

"*Q.* Was it done for convenience, in any way?

"*A.* Yes; it was. Weicksall's men did all the trading. Vogel never came and bought goods for this man,—Vogel himself.

"*Q.* That is, he never came and got the goods?

"*A.* No, sir.

"*Q.* Mr. Weicksall's men were the ones who came and got the goods from the store?

"*A.* Yes, sir.

"*Q.* And it was for that reason that you kept the account in Weicksall's name?

"*A.* It was."

A. E. Felter, a witness also called for the plaintiff, testified that he was in the employ of the plaintiff, and further as follows:

"I was called back to the desk by Mr. Smith to listen to the conversation between him and Mr. Vogel. He asked Mr. Vogel if he would guarantee the account, and if it would be all right to let Weicksall have goods on his account, and Mr. Vogel said it was.

"*Q.* Did Mr. Vogel give any reason in your hearing why it was all right to let him have the goods? .

"*A.* Mr. Vogel said at that time Mr. Weicksall was getting along very nicely in his lumbering job, and he would get out all right and make some money out of it, and the account was all right, and let him have all the goods he needed.

" *Q.* What did he say about paying?
" *A.* He said that he would guarantee the account.
" *The Court:* He said that he would guarantee it?
" *A.* Yes, sir.
" *The Court:* Are you sure that expression was used?
" *A.* He would guarantee the account."

This is all the direct testimony bearing upon the question of the contract that was made by defendant upon which the goods were delivered to Weicksall. It appears that the goods were charged upon the books of the company to Weicksall, but the court correctly held that this is not conclusive that credit was given to Weicksall, on the authority of *Larson* v. *Jensen*, 53 Mich. 427 (19 N. W. 130).

But a more serious difficulty confronts the plaintiff in this case. No reasonable construction can be put upon the language employed by the parties which leads to any other conclusion than that this engagement of defendant was an agreement to answer for the debt of a third person, and to become a guarantor of the payment of his obligations, rather than an original promisor. The case, in its facts, is very similar to *Studley* v. *Barth*, 54 Mich. 6 (19 N. W. 568), and, we think, is ruled by that case.

The judgment must be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.