MARQUETTE & SOUTHEASTERN RAILWAY CO. *v.* LONG-
YEAR.

1. RAILROADS—CONDEMNATION PROCEEDINGS—PETITION—DESCRIP-
TION OF ROUTE—SUFFICIENCY.

2 Comp. Laws, § 6243, provides that the petition in condemna-
tion proceedings by a railroad company shall contain a state-
ment that it is the intention of the company to construct a
railroad from and to the places named in its articles of asso-
ciation. A petition for condemnation recited that the com-
pany was organized for the purpose of constructing a railroad
from L. to the shore of Lake Michigan, at or near M.; that it
had caused surveys to be made, and located its road in accord-
ance therewith; and that it intended to construct such road
from L. as far as R., "and thence to the shore of Lake Mich-
igan." *Held,* a sufficient compliance with the statute.

2. EMINENT DOMAIN—PARTIES—MORTGAGEES.

Where a petition in condemnation proceedings shows that
petitioner has acquired the interest of the owner of a certain
parcel, and a mortgagee of such parcel is made a party, the
fact that the former owner is not also made a party does not
deprive the court of jurisdiction.

3. RAILROADS—CONDEMNATION PROCEEDINGS—RIGHTS OF WAY.

It is not necessary that a railroad company seeking to con-
demn a right of way under 2 Comp. Laws, § 6242 *et seq.*, shall
embrace in one petition all lands within the county necessary
to be so acquired for the construction of its road.

4. SAME—PARTIES.

Hence an objection that certain persons not made parties to a
proceeding are entitled to damages is without force.

5. EMINENT DOMAIN—AWARD OF JURY—CONCLUSIVENESS.

An award of damages by a jury in condemnation proceedings,
if within the legitimate scope of the testimony, will not be
disturbed on appeal.

6. RAILROADS — RIGHTS OF WAY IN STREETS — COMPENSATION TO
ADJOINING OWNERS.

2 Comp. Laws, § 6234, subd. 5, provides that no railroad shall
be constructed on any street until compensation shall have
been made to the owners of property adjoining the street,

and opposite where such railroad is to be constructed. *Held*,
that the owner of property abutting on the opposite side of a
street from that in which a road is to be laid is entitled to
compensation.

7. SAME.

But property situated some distance from such street, with
another street intervening, though used in connection with
land abutting on the former street, is not "adjoining" prop-
erty, within said statute.

Appeal from probate court, Marquette county; Kelsey,
J. Submitted November 18, 1902. (Docket No. 94.)
Decided May 1, 1903.

Proceedings by the Marquette & Southeastern Railway
Company to condemn lands for a right of way. Respond-
ents John M. Longyear and Mary H. Longyear appeal
from the award and order of confirmation. Reversed in
part.

*Ball & Ball*, for appellants.
*George P. Brown* (*Charles R. Brown* and *Henry M.
Campbell*, of counsel), for appellee.

MOORE, J. This is a proceeding to review the action
taken upon a petition presented to the probate court for
the county of Marquette for the condemnation of a right
of way for the petitioner's railroad across five parcels of
land, of which the appellants were the owners, in whole
or in part. The jury found it was necessary to take the
land described in the petition for the purpose of said com-
pany's incorporation, as and for a right of way, and made
the following awards:

| | | |
|---|---|---|
| Parcel No. 1 | | $700 |
| " " 2 | | 450 |
| " " 3 | | 400 |
| " " 4 | | 1,000 |
| " " 5 | | 1 |

It is claimed the court did not obtain jurisdiction,
because the petition fails to state that it is the intention of

the petitioner, in good faith, to construct, finish, and maintain a railroad to and from the places named for that purpose in its articles of association, as required by 2 Comp. Laws, § 6243, as amended by Act No. 80, Pub. Acts 1901, which provides that the petition for acquiring rights of way shall contain, among other things, a statement that the petitioner has a railroad constructed from and to points specified, or "that it is the intention of said company, in good faith, to construct, finish, and maintain a railroad * * * from and to the places named for that purpose in its articles of association."

That part of the petition material to the discussion of this question reads as follows:

"Your petitioner, the Marquette & Southeastern Railway Company, respectfully shows that it is a corporation duly organized under the railroad laws of the State of Michigan for the purpose of constructing, operating, and maintaining a railroad from the city of Marquette, commencing at a junction with the Lake Superior & Ishpeming Railway near Presque Isle, in said city of Marquette, in said county of Marquette, and running thence through the city of Marquette, southeastwardly, and through the counties of Marquette, Alger, and Schoolcraft, to the shore of Lake Michigan, at or near Manistique, in the county of Schoolcraft, a distance of eighty-five miles, as near as may be; * * * that the company has caused to be surveyed the route of its proposed road through said city of Marquette, and in said county of Marquette, as far as a junction with the Munising Railway, in the county of Alger, and has made maps of said survey of said route, by which said route is designated from the junction with the Lake Superior & Ishpeming Railway, in said city of Marquette, through the said city of Marquette, and has caused certificates of said maps, in due form, signed by a majority of the directors of said company, to be filed in the register of deeds' office of said county, and has located its said road through said city of Marquette on the survey as shown by said maps, and in accordance with such survey, and it is the intention of your petitioner, in good faith, to construct, finish, and maintain said railroad on the line as so located from said junction with said Lake Superior & Ishpeming Railway, through said city of Marquette and county of Marquette, as far as the said Munising Railway, in said

county of Alger, as aforesaid, and thence to the shore of Lake Michigan; that the maps of said survey and located line of railroad, showing the line thereof on Lake street, and across Walnut street, in the city of Marquette, have been approved by the railroad crossing board of the State of Michigan; and that permission to construct said railroad in said Lake street, and across said Walnut street and other streets in said city of Marquette crossed by the same, has been granted by the common council of the city of Marquette in due form."

It is true, the petition does not follow the language of the statute literally, by saying the petitioner intends to construct the road "from and to the places named for that purpose in its articles of association;" but, when the petition is read as a whole, we think it is a substantial compliance with the statute. It recites that the company was organized for the purpose of constructing and maintaining a certain railroad, describing from what point to what point it is to be constructed. It then recites the amount of the capital stock of the company, and how much is paid in; that it has caused surveys to be made, etc., "and has located its said road through said city of Marquette on the survey as shown by said maps, and in accordance with such survey, and it is the intention of your petitioner, in good faith, to construct, finish, and maintain said railroad on the line as so located from said junction with said Lake Superior & Ishpeming Railway, through said city of Marquette and county of Marquette, as far as the said Munising Railway, in said county of Alger, as aforesaid, and thence to the shore of Lake Michigan." This could not be much more definite as to the route of the road from its commencement, in Marquette, to the junction with the Munising Railway, in the county of Alger; and it is not an unreasonable inference to draw from the language, "and thence to the shore of Lake Michigan," when taken in connection with the statement made in the earlier part of the petition, that the company had been organized to construct and operate a railroad commencing, etc., running, etc., "southeastwardly, through the counties of

133 MICH.—7.

Marquette, Alger, and Schoolcraft, to the shore of Lake Michigan, at or near Manistique, in the county of Schoolcraft, a distance of eighty-five miles," that it in good faith intended to construct and operate the road to the last-named point. See *Bay City Belt-Line R. Co.* v. *Hitchcock*, 90 Mich., at page 541 (51 N. W., at page 810).

It is also said the court did not get jurisdiction as to parcel No. 1, because Hornstein and Russell should have been joined in the proceeding and served with notice. This claim is based upon the fact that Mr. Longyear had a mortgage on the parcel, given by Russell, Hornstein, and Blake; and it is said that, by reason of the failure to bring in Russell and Hornstein, it was impossible for the jury to consider the question of Longyear's mortgage interest. Mr. Longyear and Mr. Blake were made parties to the proceeding. The petition shows that, before the proceeding was commenced, Russell and Hornstein had conveyed all of their interest in the parcel of land to the petitioner, who, of course, was before the court. The record also shows that the value of the parcel taken, as fixed by the jury, was paid into court. See 2 Comp. Laws, § 6249; *Cincinnati, etc., R. Co.* v. *Bay City, etc., R. Co.*, 106 Mich. 473 (64 N. W. 471). This having been done, there will be no difficulty in taking care of the interest Mr. Longyear has, by reason of his mortgage, in the parcel condemned.

It is claimed there can be no condemnation of the parcels of land and right of way described in the petition, without including in the petition and proceedings such other parcels of land as are necessary for the construction of the road, and without which it cannot be constructed and operated even upon the parcels described, and upon which the right of way has not been obtained. Counsel say:

"The railroad company may take either one of two courses: *First*, to include in its condemnation proceedings all the lands, property, and franchises required for the construction of its road in the county; or, *second*, it

may first contract for as much of the property required as it is able to do, and institute one condemnation proceeding for the rest.''

It is argued that ''the jury must first pass upon the necessity of the railroad as a public work, and then must pass upon the necessity of taking each piece of land for that purpose. One jury might find that the road was a public necessity; another might find the contrary. One jury might find that it was necessary to adopt the proposed route as adopted by the company, while another might find it not necessary. The whole subject of the necessity of the work as proposed, as well as the necessity of taking each parcel of property, is equally within the province of the jury to determine,''—citing the case of *Houghton Common Council* v. *Mining Co.*, 57 Mich. 547 (24 N. W. 820), and other cases.

A reference to these cases will show that the statute under which the proceedings were commenced authorized only a single proceeding, in which all the lands should be described. The statute which applies to railroads reads differently. Section 6242, 2 Comp. Laws, provides:

''In case any railroad company is unable to agree for the purchase of any real estate, property, or franchises required for the purpose of its incorporation, it shall have the right to acquire title to the same in the manner and by the special proceedings prescribed in this act.''

Section 6243 provides:

'' For the purpose of acquiring such title, such company may present a petition,'' etc. ''Said petition * * * shall contain the description of all the real estate, property, or franchises, or so much thereof as the company seeks to acquire under such petition in said county.''

Section 6245, 2 Comp. Laws, contemplates ''that any person or persons or company whose estate or interest is to be affected by the proceedings '' may have a jury. Section 6232 permits a change in the route of the road, if necessary. Section 6251 provides that, if the proceeding results in the company securing a defective title, it may proceed anew to acquire a perfect title.

These provisions are inconsistent with the idea that all the lands within the county required for the road must be included in one petition, and passed upon by one jury. Many cases have been before this court in which only a small number of parcels have been sought to be condemned, and in several instances only one parcel. While the precise question here involved has not been raised in any of these cases, that fact is significant, as indicating what the practice has been understood to be. The language of the statute indicates that the railroad company must acquire its right of way by negotiation with the parties, if practicable, and it is only when it cannot do so that it can resort to proceedings for condemnation. It may often happen that, by negotiation, the right of way will be secured for all of the proposed line, except isolated descriptions which are long distances from each other. If the conditions are such that it is desirable to have several or many parcels described in a single petition, and condemned in one proceeding, that may be done; but there is nothing in the statute that makes it necessary to embrace in one petition all of the descriptions in the county necessary for the construction of the road, where negotiations have failed.

As to parcel No. 5, it is said there was a failure to bring in all of the necessary parties. This objection relates to that portion of the right of way located in what the petition claims is Lake street. The appellants do not concede that what is called "Lake Street" is a highway. The right of way, so far as the common council could do so, was granted in this highway. The railroad is wholly on the south side of the center line of the street. The land on the south side of this street belonged to Mrs. Longyear. She also owned land on the north side, running west about 350 feet from Walnut street. The land west of her on the north side of the street was owned by other persons who were not made parties to this proceeding. It is insisted by the petitioner that, as the road is located and all of the property taken is south of the center line of the street, the

property north of the street is not adjoining property, within the meaning of the statute, and that the owners thereof are not necessary parties to this proceeding. In our view of the law, we do not need to decide whether the persons on the north side of the street are adjoining owners, in the sense that they are entitled to have damages assessed before the road can be built.[1] These persons are not here complaining. If they have rights which the railway company has not acquired, they will not be precluded from asserting them because of a proceeding to which they are not parties. *Chicago, etc., R. Co.* v. *Sanford,* 23 Mich. 428. If we are right in holding that it is not necessary to embrace in one petition all the land in the county required for the construction of the road, this objection cannot be sustained.

It is said the award is contrary to the rights of Mrs. Longyear, because:

"As to parcel No. 5, the jury excluded from their award all consideration of the question of damages to the property of Mrs. Longyear lying north of, and abutting upon, what is called 'Lake street,' and also all question of damages to the remainder of the residence property by reason of the taking of parcels No. 4 and No. 5."

Mrs. Longyear is the owner of three tracts of land: *First,* a block of land in the center of which is her dwelling house, which block is about 750 feet east and west between Cedar and Walnut streets, and 300 feet north and south between Arch and Ridge streets; *second,* she owns the tract south of Ridge street, lying between Ridge and Lake streets, and extending 350 feet west from Walnut street; *third,* a tract south of Lake street, extending along the harbor front from the Grace Furnace Dock, so called, to the government lighthouse reserve. Petitioner's located line extends east along Lake street, south of its center, to Walnut street, and across the north side of that portion of the third tract above mentioned which lies east of the west line of Walnut street. The land required for right of way across this part of the tract is designated in the petition as

---

[1] See, however, page 106, *post.*

parcel 4. That portion for right of way in Lake street opposite the remainder of the third tract is designated as parcel 5. Mrs. Longyear was awarded as compensation for the taking of parcel 4, and damages to the remainder of the lands from which it was taken, the sum of $1,000, and for damages to her lands lying south of Lake street she was awarded the nominal sum of $1.

There were many blue prints and some photographs offered in evidence, which cannot be reproduced here, which help very clearly to explain the situation. The railroad is south of the residence, and does not come within 300 feet of it. There is a space intervening from the house to Ridge street, then Ridge street, and then quite a deep lot and half of Lake street. On the east the right of way is at least 600 feet from the house,—four lots intervening, then Walnut street, and then a very considerable space before coming to the right of way. The jury viewed the premises. It was claimed on the part of Mrs. Longyear that all three tracts of land owned by her, and before described, were used in connection with her residence property, and that her damages would be at least $40,000. It was the claim of petitioner that damages should not be allowed, in making the award as to parcel 4, because of any supposed injury to Mrs. Longyear's residence property north of Ridge street and west of Walnut street, but upon the part of Mrs. Longyear testimony was given upon that subject. Witnesses upon the part of the petitioner as to the damages caused by the taking of parcel 4 differed in their estimates, ranging from $50 to $300, while the award made by the jury was $1,000. It is insisted upon the part of the petitioner that this award could not have been made without allowing something for damages to the residence property north of Ridge street and west of Walnut street, and to that part of the property between Lake street and Ridge street west of Walnut.

In *Michigan Air Line Railway* v. *Barnes*, 44 Mich. 222 (6 N. W. 651), Justice GRAVES, speaking for the court, said:

"When the law provided how the tribunal should be constituted for these cases, and prescribed the method to be observed, it obviously contemplated that the practice respecting the admission of testimony should be as simple as a due regard to substantial justice would permit. It was not intended to leave the fate of the determination had in view to any finespun theories, or to the refinements which are not uncommon in trials at the circuit. They were not supposed to be necessary to the fundamental purpose or beneficial working of inquests of this nature, and no provision was made for the certain attendance of any one presumptively qualified to deal with them. The statute plainly assumes that the jury may conduct the inquiry without the aid of any legal expert, and under circumstances in which it would be difficult, if not impracticable, to preserve technical or hair-drawn questions in a shape to be reviewed. And were the niceties of *nisi prius* to be insisted on, the proceeding would speedily break down under the perplexities and embarrassments due to its own methods. The conclusion to which these and other considerations lead is that a very large discretion in admitting and rejecting testimony is left to the jury, or the attending officer, whenever there is one, and that, when the case is brought here by appeal, the award cannot be disturbed on account of such decisions, unless it is fairly evident, in view of the facts and circumstances, that the ruling was not only inaccurate, but was a cause of substantial injustice to the appellant in the matter of the result."

In *Toledo, etc., R. Co.* v. *Dunlap,* 47 Mich. 456 (11 N. W. 271), Justice Campbell, speaking for the court, said:

"The judge formed no part of this special tribunal. The statute, indeed, allows the judge to 'attend said jury, to decide questions of law and administer oaths to witnesses.' Section 21, art. 2. But the same statute which allows this allows him to designate a circuit court commissioner for the same purpose, and also allows the jury to proceed without either. Whatever the language of this statute, literally construed, may mean, it is very clear that any such functions must, at most, be advisory. The jury will undoubtedly be regarded as accepting and doing what they permit to be done. But in all such cases the Constitution, as well as the principles of the common law, makes them judges of law and fact. *Chamberlin* v. *Brown,* 2

Doug. 120. Their conclusions are not based entirely on testimony. They are expected to use their own judgment and knowledge from a view of the premises, and their experience as freeholders, quite as much as the testimony of witnesses to matters of opinion. And while an appellate court is bound in such cases to set aside proceedings which appear to be based on false principles, it cannot properly deal with rulings as if they were excepted to on a common-law trial, or dispose of the controversy on merely technical notions. *Chamberlin* v. *Brown*, 2 Doug. 120; *Michigan Air Line Railway* v. *Barnes*, 44 Mich. 222 (6 N. W. 651)."

In *Fort-Street Union Depot Co.* v. *Jones*, 83 Mich. 415 (47 N. W. 349), Justice GRANT, in speaking for the court, quoted with approval the language of Justice CAMPBELL in the case of *Toledo, etc., R. Co.* v. *Dunlap, supra,* and said:

"A careful examination of the testimony upon the question of values does not convince us that a case is made calling for the interference of this court. While, under the statute, this court may, upon appeal, set aside an award of the jury, and order a new appraisal, this should only be done where it is clear that the award is against the evidence. In this case the damages awarded were within the values placed upon the property by several witnesses. The jury knew the purpose for which the land was to be condemned, and we cannot say that they did not consider the value of the land for that purpose. They viewed the premises, saw the witnesses while testifying, and were chosen because of their supposed knowledge of the value of real estate in the vicinity. We cannot say that the award was against the evidence, or even against the weight of evidence."

We think this branch of the case comes within those decisions. The question of damages was one about which different persons would greatly differ. There was testimony upon which to base the award, and, if it were not for an error as to parcel 5, we should not think it our duty to disturb the award.

It is true, as to parcel 5, that the line of the road is south of the center of the street. Mrs. Longyear, as before

stated, is the owner of the land between Lake street and Ridge street, and west of Walnut street. While it may be true, as contended by the petitioner, that, in the award of $1,000 for parcel 4, the jury took into consideration the damages to the above-described property, it is apparent they did not do so in awarding damages growing out of the taking of parcel 5. It is claimed on the part of the petitioner that, as the line of the road is south of the center of Lake street, it is not necessary that an award of damages to the land north of that street should be made to Mrs. Longyear before the railroad may be built, and that, if she suffers damages, she can recover them in an action at law after the line is completed; citing *Grand Rapids, etc., R. Co.* v. *Heisel*, 38 Mich. 62 (31 Am. Rep. 306). A reference to that case, however, will show it was not a condemnation proceeding, and the question whether damages must be determined before the road could be built was not involved. When the case was here the second time (*Grand Rapids, etc., R. Co.* v. *Heisel*, 47 Mich. 393 [11 N. W. 212]), Justice CAMPBELL, speaking for the court, said:

"Our American statutes, including our own previous to our statute of 1873, have been defective in not generally providing any statutory remedy for persons injuriously affected by the construction of public works, with the single exception of those who have had property taken specifically. But the statute now in force, and before referred to, has provided for the most important of these cases, in favor of adjacent proprietors whose situation on public or other ways makes them the real parties most injured by their use for railways, and has, to this extent, relieved the law from an anomaly which the English statutes have always guarded against. The English courts, in construing their statutes, have usually applied them, when they could do so, as covering such damages as would have been actionable if no authority had been given to do the injurious acts. And there has been no serious difference between the English and American courts in defining actionable rights. And where the company has not brought itself within the statutes, the common-law action has been fully maintained.

"It need hardly be said that nothing can be fairly termed compensation which does not put the party injured in as good a condition as he would have been in if the injury had not occurred. Nothing short of this is adequate compensation. In the case of land actually taken, it includes its value, or the amount to which the value of the property from which it is taken is depreciated; and in *Jubb* v. *Hull Dock Co.*, 9 Q. B. 443, it was held that, where the property taken was a brewery in operation, the damages included the necessary loss in finding another place of business. In cases where damage is by injury aside from actual taking of property, the rule has been to make the party whole, as nearly as practicable; and, where it affected the rental value or enjoyment, the same principle has been applied as in other cases. There is no reason, and, so far as we can discover, no law, which allows the wrongdoer to cast any portion of an actual and appreciable loss on the party whom he injures. In such a case as this it is in the power of the company, and always has been, to have the compensation settled once for all, and to get any benefit which the law attaches to such a method of ascertainment."

The language of the statute (2 Comp. Laws, § 6234, subd. 5) is as follows:

"But such railway shall not be constructed upon any public street, lane, alley, highway, or private way until damages and compensation be made by the railroad company therefor to the owner or owners of property adjoining such street, lane, alley, highway, or private way, and opposite where such railroad is to be constructed, either by agreement between the railroad company and each owner or owners, or ascertain[ed] as herein prescribed for. obtaining property or franchises for the purpose of its incorporation, to be paid to the owner thereof, or deposited as hereinafter directed."

This language is not ambiguous, and clearly gives Mrs. Longyear the right to have damages and compensation, as the owner of property adjoining Lake street on the north, if she has suffered any, before the railway can be constructed. See *Riedinger* v. *Railroad Co.*, 62 Mich. 29 (28 N. W. 775); *Nichols* v. *Railway Co.*, 87 Mich. 361 (49 N. W. 538, 16 L. R. A. 371). Because of this error,

the award will be set aside as to parcel 5. We deem it proper to add that, as to the block of land upon which the residence is situated, we do not think it so adjoins Lake street that damages thereto should be given.

The other assignments of error have been considered. We do not regard them as tenable, and deem it unnecessary to discuss them.

The award is confirmed as to all the parcels, except parcel 5. The award as to parcel 5 is set aside, and the case is referred back to the same jury to appraise the damages caused by the taking of parcel 5 in accordance with this opinion.

The other Justices concurred.