DETROIT & TOLEDO SHORE LINE RAILROAD CO. *v.* HALL.[1]

1. RAILROADS—EMINENT DOMAIN—NECESSITY—APPEAL.

Where, in proceedings by a railroad company to condemn a right of way, both the court and jury, on conflicting testimony, have found the proposed road to be a public necessity, their decision will not be reviewed on appeal.

---

[1] Rehearing denied September 22, 1903.

2. SAME — BONA FIDE EFFORT TO ACQUIRE LAND—EVIDENCE — JURISDICTION.

Where, in condemnation proceedings by a railroad company, the court, upon the issue whether a *bona fide* effort had been made to acquire the land, decided, on the evidence offered, that it was a case for a jury, but that the landowner might later offer additional evidence as to value for the purpose of perfecting the record, the refusal of another judge, before whom the matter was taken up, to hear the additional testimony, did not oust the court of jurisdiction to impanel a jury.

3. SAME—FINDING OF JURY—CONCLUSIVENESS.

Where, in condemnation proceedings by a railroad company, the jury viewed the premises, and the testimony as to value was conflicting, their finding thereon will not be reviewed on appeal.

4. SAME—INSTRUCTIONS—NECESSITY.

In proceedings by a railroad company to condemn a right of way, an instruction that railroads are public necessities, and that the taking of land for railroads is taking land for a public use, was not objectionable as removing the question of necessity from the jury, where other instructions specifically stated that it was for the jury to determine whether the proposed road was a public necessity, and whether it was necessary to take the land in question therefor.

5. EMINENT DOMAIN—DAMAGES—INSTRUCTIONS.

An instruction in proceedings to condemn land that the jury should pay the landowner what the land was worth, and no more, was not erroneous as excluding damages for anything on or under the land, as well as the damages resulting to the other land, where other instructions specifically stated that the value of the land was what it was worth, taking into consideration any injury that might be sustained to the land remaining.

6. RAILROADS — EMINENT DOMAIN — ALLOWANCE OF ATTORNEY'S FEES—APPEAL.

2 Comp. Laws, § 6248, providing for an appeal from "the appraisal or report of the commissioners or jury" in condemnation proceedings by a railroad company, does not authorize an appeal from the allowance of attorney's fees to the owner of land condemned, made under the express authority of section 6240.

*Certiorari* to and appeal from Wayne; Brooke, Hos-

mer, and Frazer, JJ.  Submitted January 13, 1903.
(Docket Nos. 24, 25.)  Decided May 29, 1903.

Condemnation proceedings by the Detroit & Toledo
Shore Line Railroad Company against Edmund Hall and
Mary Hall.  Respondents appeal from the award of the
jury, and bring *certiorari* to review the anterior proceed-
ings.  Affirmed.

*Oscar M. Springer*, for appellants.

*Brennan, Donnelly & Van De Mark*, for appellee.

MOORE, J.  These proceedings were brought to acquire
a strip of land belonging to the respondent Hall for rail-
road purposes, containing 3.64 acres.  The jury awarded
for the taking of said land $364.  Their award was con-
firmed by the circuit judge.  The proceedings are sought
to be reviewed here.  There are 100 reasons assigned why
the judge erred in confirming the award, and the printed
record contains over 600 pages.  The proceedings were
commenced before Judge Brooke, and conducted before
him until directions were given for striking a jury.  The
jury was struck under the direction of Judge Hosmer,
while the trial, after a jury was obtained, was conducted
before Judge Frazer.  It is likely some of the questions
discussed by counsel would not have arisen if all the pro-
ceedings had been conducted under the supervision of but
one judge.

It is claimed the proceedings must fail because there
was no public necessity for another line of railroad between
the points named in the petition, Toledo and Detroit.  It
is argued by counsel that, as the two railroads already
constructed between those two cities can do all the busi-
ness, another road is not necessary.  On the other hand,
it is claimed that the two roads between the two cities are
practically under one management, so that there is no
competition between them, and that there are nine railroads
terminating in Toledo and six in Detroit, with no connec-

tion between these terminals except the two roads mentioned, and that another connection was a public necessity. Proofs were taken in support of these diverse views. The judge, before he ordered a jury to be impaneled, must have been satisfied upon this point; and later the jury, as indicated by its award, was also satisfied. This court will not, under such circumstances, review their action. *Toledo, etc., R. Co.* v. *Dunlap,* 47 Mich. 456 (11 N. W. 271); *Port Huron, etc., R. Co.* v. *Voorheis,* 50 Mich. 506 (15 N. W. 882); *Saginaw, etc., R. Co.* v. *Bordner,* 108 Mich. 236 (66 N. W. 62); *Marquette, etc., R. Co.* v. *Longyear, ante,* 94 (94 N. W. 670).

The second objection, and perhaps the most important one, is stated by counsel as follows:

"It was error to strike or to draw a jury to condemn appellants' lands without giving appellants an opportunity to complete their proofs on the question of value of the property sought to be taken; for without such evidence the court could not determine whether or not a fair offer had been made to them by the appellee for the land before it filed its petition in this cause."

Counsel says it must be made to appear that a *bona fide* effort to acquire the land has been made before the aid of the court can be invoked, and that, before that can be determined, the court must receive testimony as to the value of the land, and all the testimony that the owner of the land desires to offer; citing a number of cases, but especially relying upon *Grand Rapids, etc., R. Co.* v. *Weiden,* 69 Mich. 579 (37 N. W. 872). The petition in this case follows the form approved in the *Weiden Case.* There was testimony taken before Judge Brooke showing that Mr. Hall was offered $100 an acre for his land by a representative of the company, and refused to take it. Testimony was also offered on the part of the railroad company that the land was worth $70 an acre. It was the claim of Mr. Hall that the land was part of a valuable stone quarry, and was worth at least $1,000 an acre. On the part of the railroad company it was claimed the land

133 MICH.—20.

had no value as a quarry, and proofs were offered in support of these various claims. After the attorney for Mr. Hall had called all the witnesses he had in court, there was a discussion as to a further hearing at which he might put in additional proof in relation to value. Any delay was objected to on the part of the railroad company. The court informed the attorneys, in substance, that there was such a wide difference in the estimates of values, and enough testimony had been put in upon that subject, that more witnesses swearing the land was worth $1,000 an acre would not change his opinion, and that he thought it his duty to order a jury; but that, if the attorney desired to put the record in better shape, he might, on the morning the jury was to assemble, call witnesses as to value; and made an order that a jury be called for the following Tuesday. Judge Brooke had occasion to leave the city before Tuesday, and the proceeding was taken up before Judge Hosmer. The attorney for Mr. Hall objected to the striking of a jury, and stated he desired to swear witnesses to show there were 12 apple trees upon the land, worth $150 to $200 apiece; that there was other timber, worth more than the entire amount offered by the railroad company; and that the stone under the land was worth upwards of $100,000. Judge Hosmer declined to hear this testimony, because he was of the opinion that Judge Brooke, in order to reach the conclusion that it was his duty to order a jury, must have been satisfied there was a *bona fide* effort made to acquire the title to the land, which effort had failed.

It is undoubtedly true that, if Judge Brooke had been present, he would have received this testimony; but it is evident, from what was stated by him, it would have been received only for the purpose of perfecting the record, so that his action might be reviewed in this court. It is very apparent he was satisfied there was such a wide difference of opinion as to the value of this property that the parties could not arrive at an agreement for right of way, and that it was a proper case to be submitted to a jury. The offer made on the part of the attorney for Mr. Hall accomplished

the same purpose sought to be accomplished by Judge Brooke.    There must come a time, in the preliminary proceeding before the judge, to decide whether a jury shall be called or not, when the taking of testimony shall end. It has already appeared that Judge Brooke was satisfied from the evidence which had been offered that a jury ought to be called, and that the evidence which was proposed was cumulative, and would not change his opinion. As all this testimony might be offered before the jury, and later was offered, and the trial fully entered upon, we do not think the court lost jurisdiction by what was done.

The jury visited the premises.    Complaint is made of instructions which are said to have been given to the jury limiting their inspection of the premises.    Counsel says in his brief that in some way these instructions were left out of the printed record, but appear in the original transcript, as a reference will show, but does not say where in the transcript they may be found.    Opposing counsel say no such instructions were given.    The original transcript contains upwards of 550 typewritten pages, besides all the exhibits.    The writer of this opinion has made a diligent effort to find the instructions which are said to have been left out of the printed record, and has been unable to do so.    Under the circumstances he does not feel called upon to discuss further what is said by counsel upon that subject in the brief.

Counsel says:

"It did not appear in these proceedings at any time that the appellants asked an unreasonable price for the land, or that the appellee made a *bona fide* attempt to agree with them upon a price for the property desired."

This raises a question of fact.    An offer of $100 an acre was made and refused.    The company claimed this would fully pay the damage, while Mr. Hall claimed it was only a small part of it.    A very large number of witnesses were called.    Their testimony was as far apart as it could well be.    The jury visited the premises.    In view of this conflict, we do not feel called upon to review the action of

the jury as to the questions of fact. See *Marquette, etc., R. Co.* v. *Longyear, ante,* 94 (94 N. W. 670), and the cases there cited.

Complaint is made of the charge of the court to the jury. Counsel says the court erred in his charge. We quote from the brief:

"To charge the jury, as a matter of law, that 'it has been repeatedly held that railroads are public necessities, and that the taking of lands for railroads is taking land for public use,' without any qualification, amounted to removing the question of necessity from the jury. * * *

"To say to the jury, 'Pay Mr. Hall what the land is worth, and pay Mr. Bewick what the land is worth, and no more than it is worth; that is all they are entitled to,' —limited the jury in their award of damages, and more than likely accounts for the small award, $100 per acre. By it the jury would understand they were to give no damages for anything on the land or under the land, and no damages for any change in the manner of conducting the quarries that would, as the uncontradicted evidence shows, becomes necessary as a result of taking the property."

These statements, taken by themselves, removed from the remaining portion of the charge, do not give a proper impression of its effect. The judge charged the jury, among other things:

"The first question for you to determine is whether it is necessary to take this land for public use. The law says that a man shall not be deprived of his land unless he sees fit to part with it, unless that land is necessary for a public use. It has been repeatedly held that railroads are public necessities, and that the taking of land for a railroad is taking land for a public use. It is for you to determine whether this land is necessary to be taken by this railroad, and whether it is for the benefit of the public to have an additional railroad constructed from Toledo here. The various reasons assigned by the different parties on this question you have heard. It is claimed on the part of some that any number of railroads between here and Toledo would be a benefit to the public, and by the public is meant, not the parties immediately adjoining this railroad, but the public that are to be convenienced by the

operation of this road either in carrying freight or in carrying passengers. If you shall determine that the construction of this road is a matter of public necessity, and that the public will be benefited by it, then you have a right to determine if this road is necessary for public use; and, if it is necessary for public use, they have a right to condemn this land under what is known as the right of eminent domain. That is the first question you have to determine. * * *

" Now, its value is simply what it is worth, taking into consideration any injury that it may do to the party who owns the land; that is, to the land that is left. If this line cut right through the middle of a man's farm, destroyed his house, cut him off from his corn, cut him off from the highway, or anything of that kind, those circumstances would all be necessary and proper for you to take into consideration for the purpose of determining not only the value of the land, but the injury it might do him in taking that land. If it is taken off the lower end of his farm, or some place where it does not prevent him from having easy access to the highway, then it would damage him less; and all those matters are matters for you to take into consideration in fixing the value of this land, which is what it is worth, and what damage it may do to the property that may adjoin or that may be left."

We have quoted enough from the charge to show the jury were properly instructed upon the two principal questions in the case.

The other objections made to the award and its confirmation by the judge have been considered, but we do not deem it necessary to discuss them.

One question remains to be considered. Section 6240, 2 Comp. Laws, provides that the court shall allow the owners of land condemned, in addition to the damages and compensation awarded by the jury, a reasonable attorney fee, to be fixed and determined by the court when the report or verdict is confirmed. The judge allowed $100 as an attorney fee. The trial of the case lasted from September 5th to September 12th, inclusive. Counsel spent much time before Judge Brooke before an order for a jury was made. He also appeared in the proceeding before Judge Hosmer, and spent time interviewing the

witnesses and looking up the law applicable to the case. A party whose land is sought to be condemned has a right to contest its condemnation, and to employ counsel, and the statute contemplates the counsel shall be paid a reasonable amount for his services. Speaking for myself, I think the amount the attorney was allowed in the court below was too small; but it does not follow that, because of that, the award should fail.

This situation presents the question as to whether or not an appeal is allowable from the order of the circuit judge fixing the amount of attorney's fees, and, if allowable, whether or not this court will review the action of the circuit judge in exercising his discretion. We have asked counsel to furnish us with briefs upon this proposition, and they have complied with this request; but the diligence of counsel has not enabled them to find any authority for an appeal in proceedings of this character except that conferred by section 6248, 2 Comp. Laws, which provides, among other things, that:

"Within twenty days after the confirmation of the report of the commissioners or jury, as above provided for, either party may appeal, by notice in writing to the other, to the Supreme Court, from the appraisal or report of the commissioners or jury."

It will be observed there is no provision in the statute for an appeal from the order of the judge making an allowance for an attorney fee. This would indicate the legislature deemed the judge before whom the proceeding was had better qualified to pass upon that question than would be a tribunal before whom all of the proceedings would not appear in the record, and intended to make the action of the trial judge final.

The award made in the court below is confirmed, with costs to appellee.

The other Justices concurred.