## SAGINAW MILLING CO. v. MOWER.

1. STATUTE OF FRAUDS—ORIGINAL OR COLLATERAL PROMISE—EVI-
   DENCE—SUFFICIENCY.

   In an action for the price of goods delivered to the tenant on
   defendant's farm, after plaintiff's agent had a conversation
   by telephone with defendant, evidence examined, and *held*,
   to raise a question for the jury whether defendant's promise
   was an original promise or a collateral undertaking required
   by section 9515, 3 Comp. Laws, to be in writing.

2. SAME—EVIDENCE—WRITINGS—PLAINTIFF'S BOOKS—CONCLUSIVE-
   NESS.

   On the issue whether defendant's promise was original or col-
   lateral, plaintiff's order, books, and letters, showing that the
   attitude of plaintiff originally was that the promise was col-
   lateral, were not conclusive, but were open to the explana-
   tion that plaintiff's agent who took the order, and had the
   conversation with defendant, unintentionally misdescribed
   the circumstances, and that plaintiff's original attitude was
   based upon such misdescription.

3. SAME—INSTRUCTIONS—PROPRIETY.

   The question presented by conflicting testimony being whether
   defendant promised to pay in the first instance for goods to
   be delivered to P., or whether his promise was only to pay in
   case P. did not, instructions examined, and *held*, not open to
   the objection that by them the jury were permitted to find
   against defendant without finding that the credit was given
   solely to defendant, and not at all to P.

4. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT—REFUSAL
   OF NEW TRIAL.

   A verdict based upon substantial, though conflicting, testi-
   mony, which the trial court has refused to set aside as against
   the weight of the testimony, will not be set aside by this
   court, though it disagrees with the conclusion of the jury,
   where to do so would be to disregard the principles announced
   in *Hintz* v. *Railroad Co.*, 132 Mich. 305.

Error to Saginaw; Gage (William G.), J. Submitted
October 9, 1908. (Docket No. 14.) Decided November
30, 1908.

Assumpsit by the Saginaw Milling Company against
T. Dailey Mower for goods sold and delivered. There
was judgment for plaintiff, and defendant brings error.
Affirmed.

*Brooks & Cook*, for appellant.

*Fred W. Newton (Beach, O'Keefe & Rockwith*, of
counsel), for appellee.

BLAIR, J.    This action was originally brought in jus-
tice's court to recover of the defendant the price of certain
seeds, for which it was alleged defendant was liable.    The
defendant, Mower, was the owner of a farm which he had
leased to one Peacock by written lease, providing, among
other things, that Peacock should furnish all seed, that
the title to all crops raised should be in defendant, and
that he might retain out of the proceeds of his sales from
Peacock's share the amount of advances made by him,
with interest at 6 per cent.    Mr. Hubbard, an employé of
plaintiff, who made the sale, testified:

"April 5, 1905, Mr. Peacock called at the office, and
told me he wanted some seed.    He met no one there ex-
cept myself.

"*Q*. Did you say anything to him?

"*A*. I asked him if he was going to pay for it 'your-
self.'    He said 'No;' it was for T. Dailey Mower, to call
up upon the phone.    *    *    *    I says, 'What, is this seed
to go on his farm?'    And he says:    'Yes; it is, and he
told me to call you up.'

"*Q*. Did you have any further talk before you called
Mower up?

"*A*. I did not.    I stepped to the phone and called him
up.

"*Q*. At that time was Mr. Peacock there.

"*A*. Yes; he stood within three feet of me on the oppo-
site side of the standing desk.    *    *    *

"*Q*. Tell us what that talk was in reference to furnish-
ing of the seed?

"*A*. It took place about noon.    The boy at the billing
desk had gone to dinner, and I was looking after that
desk through the noon hour, and after talking to Mr.

Peacock, I stepped to the phone and got Mr. Mower on the phone at his house, and told him Mr. Peacock was there and wanted seed oats, etc., enumerating what he wanted, and told him we didn't know Mr. Peacock, that he had told us the seed was for Mr. Mower, and that Mr. Mower was to pay for it, and I wanted to be sure before delivering it to him. He says: 'You can give him the seed, and, if he don't pay for it, I will.' I says: 'That's not it. He says the seed is for you, and you will pay for it.' And he says: 'I will pay for it, and I will confirm the conversation in writing if you wish.' And I says: 'We have known you for some years, and it isn't necessary.'  *  *  *

"*Q.* Look at this bill No. 14,769 [showing witness paper], and state if that was the order which was taken at the time?

"*A.* That's the order made out in my handwriting.

"*Q.* 'Louis A. Peacock' is signed on the back of it?

"*A.* Yes; he receipted for it. That is always demanded when delivering goods to any one, but the party to whom it was sold; that the agent or whoever went for it should receipt for it so there would be no question afterwards.  *  *  *

L. Peacock,           4–5–4.
Guaranteed by T. D. Mower.   14,769

| | | |
|---|---|---|
| F 200 bu. Seed oats | 43 | $ 86 00 |
| F 25 bu. Seed barley | 70 | 17 50 |
| F 10 bu. Tim. seed | 1 50 | 15 50 |
| | | $119 00 |

[Signed]        "LOUIS A. PEACOCK."

Defendant Mower testified:

"He [Peacock] said that he had got to have some seed, oats, barley, and some timothy seed; that he was unacquainted with—he was acquainted with Jerome Bros., and could get it there, but he had to have it, and he hadn't the money to pay for it; that he had to get it on credit; that he was acquainted with Jerome Bros., and they would let him have it on credit, but they didn't have what he wanted; that he would have to get it either at Callam's or the Saginaw Milling Company, and that they were not acquainted with him; and I told him to go to Callam's or the milling company and have them call me up, and I would advise them in regard to him.

"*Q.* After that conversation, what did Mr. Peacock do ?

"*A.* He went away, and in a short time I was called up by phone, and they said it was the Saginaw Milling Company. They said to me that a Mr. Peacock was there, and wanted to by some grain for seed on credit, and ' What do you know about him ? ' I told them that Mr. Peacock was on my farm, that he was thoroughly reliable and honest, and they wanted to know if I would guarantee the account, and I told them I would if they thought it was necessary, but I didn't think it was necessary because I considered Mr. Peacock thoroughly reliable; and they wanted to know if I would guarantee the account in writing, and I told them ' Yes,' to send me an invoice. I never heard anything further from them for six months.

"*Q.* Did they send you an invoice ?

"*A.* No; I never heard a word from them, either written or verbal, for six months."

Prior to the litigation, plaintiff treated the original order and the books as stating correctly the legal character of the transaction, as shown by sending Peacock to Mower with a note from him to the company for Mower's indorsement and by their letters to Mower, of which we quote the following :

"Jan. 29th, '06.

"Mr. T. DAILEY MOWER,
            "Owen St., City.

"*Dear Sir:* Since talking over phone with you a few days since in regard to our account against L. Peacock, we have looked up the original order covering our sale and find that there is a notation on same stating that the account is guaranteed by you. Upon referring the order sheet to our Mr. Hubbard, who made it out, he states that he distinctly remembers calling you on the phone, and asking if you would guarantee the account, as we were unacquainted with Mr. Peacock. He states that you agreed to do this, and under these conditions we allowed Mr. Peacock to have the goods he desired. We do not wish to cause you any inconvenience in the matter, but would ask that you kindly use your influence to get Mr Peacock to take care of the account.

                    "Yours truly,
                        "SAGINAW MILLING CO.,
"W. H. E.—M. F."                        "Cashier.

The court submitted the case to the jury, who found a verdict in favor of plaintiff, overruled defendant's motion for new trial, and defendant brings the record to this court for review upon writ of error.

As stated by defendant's counsel:

"On the record only three main questions are presented under which all of the assignments of error will be taken up. These are:

"(1) Was the agreement of the defendant, T. Dailey Mower, as shown by the undisputed testimony, a promise to answer for the debt of another person required to be in writing by section 9515, 3 Comp. Laws?

"(2) Was the jury instructed to find for the plaintiff if they found the defendant made the promise claimed by plaintiff's witness Hubbard, even though that promise was one to answer for the debt of another person?

"(3) Was the verdict against the weight of the evidence (a) in regard to whether the defendant, T. Dailey Mower, said 'I will pay for it' (the goods) as claimed by Hubbard; (b) in regard to whether credit was given to Peacock?"

1. It is clear that if the transaction was as stated by Hubbard—that the sole credit was given to Mower and no credit at all given to Peacock—the promise of defendant was an original promise, and the court did not err in refusing to direct a verdict or grant a new trial on the ground that the undisputed testimony showed a collateral undertaking. The original order and the books and letters of the company's officers and employés were not conclusive of the question, but subject to explanation. *Larson* v. *Jensen*, 53 Mich. 427; *Taylor-Woolfenden Co.* v. *Atkinson*, 127 Mich. 633; *Butters Salt & Lumber Co.* v. *Vogel*, 130 Mich. 33. If the jury credited the testimony of Hubbard and accepted as true his statement of the conversation between him and Mower over the telephone, they might logically find that he unintentionally misdescribed the undertaking of Mower in the original order and the conversation with the cashier, to which the letter quoted referred, and that the attitude of the company was based upon such misdescription.

2. Defendant's counsel contend:

"The trial court regarded the sole issue in the case to be whether or not T. Dailey Mower told Hubbard he would pay for the goods to be delivered to Peacock. If he did, he was liable even though credit was also given Peacock. This appears in his reasons for denying a new trial on the first and second grounds, and on his refusal to direct a verdict for defendant. This was also his attitude in the charge to the jury."

We do not think this contention is well founded. The question presented by the conflicting testimony of Hubbard and Mower was whether Mower promised to pay in the first instance for seed to be delivered to Peacock, or whether his promise was only to pay in case Peacock did not. The court charged, in substance, that in the first instance the promise would be an original promise not within the statute of frauds and the credit would be given to Mower, but that in the second instance the promise would be collateral, to answer for the debt of another, and void under the statute, and plaintiff could not recover. Near the close of the charge the court gave defendant's sixth request, as follows:

"Under the evidence in this case, you must find by a fair preponderance of the evidence that Mr. Mower told Mr. Hubbard, of the Saginaw Milling Company, that he would pay for whatever goods the Saginaw Milling Company should let Mr. Peacock have on the occasion of the purchase of the goods in April, 1905, and that, relying solely on this promise of Mr. Mower's, and not extending credit to Mr. Peacock, the Saginaw Milling Company let Mr. Peacock have the goods."

After giving this request, the court said:

"You will take that in connection with the instructions already given you."

Defendant's counsel argue that the effect of the previous instruction was—

"That if Mower made that promise, the credit was given to him alone, and, if he did not. it was given to

Peacock. Therefore defendant's sixth request, when considered with the instructions already given, was nothing more or less than a repetition of the three already quoted, to the effect that, if Mower made the promise claimed, it was an original one, and need not be in writing."

On the contrary, we are of the opinion that the trial judge intended, and the jury would naturally so understand, that this instruction should be taken as qualifying the previous instructions, and requiring the jury to find that credit was given solely to Mower, and not at all to Peacock.

3. The determination of the essential question of fact in this case, viz., the nature of the agreement made by Mower and Hubbard over the telephone, depended upon the conclusion the jury should reach as to their credibility. They have accepted Hubbard's testimony as a reliable and correct statement of facts; and, although we may disagree with their conclusion, we cannot say that it was not based upon substantial testimony, nor invade their province of weighing conflicting testimony by determining that plaintiff's testimony was so contrary to the weight of the evidence as to justify us in reversing the ruling of the trial judge, viewing his determination in the light of the principles governing our review of his action as stated by us in the case of *Hintz* v. *Railroad Co.*, 132 Mich. 305.

Judgment affirmed.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and McALVAY, JJ., concurred.